**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

GUST MARION JANIS, Plaintiff,

vs.

UNITED STATES OF AMERICA, Defendant.

1:06-cv-1613-SEB-JMS

## Entry Granting Motion to Dismiss

Plaintiff Gust Marion Janis ("Janis") filed his complaint on November 6, 2006, alleging fifteen separate tort claims against the United States for various negligent acts of Bureau of Prisons ("BOP") employees. The United States of America has responded with its Motion to Dismiss, or in the alternative, Motion for Summary Judgment. The United States contends that summary judgment is appropriate because Janis failed to timely file suit on some of his tort claims and Janis failed to state a claim upon which relief may be granted as to other claims. On October 31, 2008, after multiple extensions of time, Janis filed his Opposition to defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment ("Janis' Opposition").

As a preliminary matter, Janis asserts that he did not have adequate time to respond to the United States' dispositive motion. This objection is overruled for two reasons. First, on April 30, 2008, with the filing of the defendant's motion and the Rule 56 Notice, Janis was fully apprised of his obligations in meeting and opposing the defendant's motion. Nearly a year after the Complaint was filed and approximately six months after the dispositive motion was filed, Janis' response was due. This should have been sufficient time to formulate an appropriate response. Second, in cases such as this, *Federal Rule of Civil Procedure* 56(f) requires the opposing party to provide "specified reasons, [why] it cannot present facts essential to justify its opposition." Thus, the question is not why discovery could not be completed, but instead why facts essential to opposing the dispositive motion could not be obtained. Even if Janis was granted an infinite amount of time to perform discovery, there Janis' Opposition fails to indicate that the discovery he seeks would lead to evidence sufficient to overcome the United States' dispositive motion.

## I. Summary of Claims

Janis is a federal prisoner who was confined at the United States Penitentiary (USP) in Terre Haute, Indiana, from November 8, 2004, until his transfer on August 15, 2007, to another federal prison. The tort claims, the relevant dates of presentment of the claim to the agency, and the date of notification of agency disposition to Janis are summarized for each of the separate tort claims as follows:

1. Tort Claim One-TRT-NCR-2006-00211-filed at the North Central Regional Office for the BOP on October 13, 2005, alleging loss of miscellaneous personal property on October 5, 2005, during a cell search. Janis requested $25,000,000.00 in damages. On March 20, 2006, Janis' claim was denied.

2. Tort Claim Two-TRT-NCR-2006-00209-filed at the North Central Regional Office for the BOP on October 13, 2005, alleging personal injury and personal property loss occurring on August 19, 2005, as a result of staff conspiring to kill his family and set fire to his mother's residence in the state of Utah. Janis alleged $2,000,000.00 in damages. On April 7, 2006, Janis' claim was denied.

3. Tort Claim Three-TRT-NCR-2006-00326-filed at the North Central Regional Office for the BOP on October 20, 2005, alleging that staff improperly confiscated two law books from him on October 11, 2005. Janis requested compensation in the amount of $803.00. On July 12, 2006, Janis' claim was denied.

4. Tort Claim Four-TRT-NCR-2006-00987-filed at the North Central Regional Office for the BOP on December 5, 2005, alleging personal injury and personal property loss because BOP staff denied him access to the administrative remedy (grievance) process. Janis requested compensation in the amount of $11,000,000.00 and stated the loss occurred on November 10, 2005, and November 16, 2005. On June 7, 2006, Janis' claim was denied.

5. Tort Claim Five-TRT-NCR-2006-00986-filed at the North Central Regional Office for the BOP on December 5, 2005, alleging personal injury and property loss commencing September 14, 2004, because BOP staff denied him access to medication, conspired to kill his family, set fire to his mother's residence in the state of Utah, and sent "threatening letters" to his family members via a post office in St. Louis, Missouri. Janis requested compensation in the amount of $26,200,000.00. On May 30, 2006, Janis' claim was denied.

6. Tort Claim Six-TRT-NCR-2006-01599-filed at the North Central Regional Office for the BOP on January 19, 2006, alleging personal injury resulting from a refusal to treat on December 5, 2005. The alleged loss results from

the BOP's negligent training and supervision of Clinical Director Thomas Webster, MD. Janis requested compensation in the amount of $22,000,000.00. On April 6, 2006, Janis' claim was denied.

7. Tort Claim Seven-TRT-NCR-2006-01600- filed at the North Central Regional Office for the BOP on January 19, 2006, alleging personal injury and life expectancy reduced because of the BOP's negligent designation of USP Terre Haute as a Level III medical facility, the lack of proper medical treatment and diet, and a lack of an evening pill-line. Janis requested compensation in the amount of $18,000,000.00. On May 30, 2006, Janis' claim was denied, but on April 3, 2007, a Correction Notice was sent to Janis because the denial letter indicated an alleged personal injury/medical loss in the amount of $22,000,000.00 when in fact Janis claimed his loss was $18,000,000.00.

8. Tort Claim Eight- TRT-NCR-2006-02081-filed at the North Central Regional Office for the BOP on February 13, 2006, alleging that the BOP negligently trained, supervised and controlled several USP Terre Haute staff members which resulted in personal property loss and personal injury commencing on December 3, 2006. Janis requested compensation in the amount of $20,000,000.00. On July 12, 2006, Janis' claim was denied.

9. Tort Claim Nine-TRT-NCR-2006-02994-filed at the North Central Regional Office for the BOP on May 1, 2006, alleging that BOP staff denied him access to medication, denied him access to his "legal materials," conspired to kill his family, set fire to his mother's residence in the state of Utah, and sent "threatening letters" to his family members via a post office in St. Louis, MO, which resulted in personal injury commencing on September 14, 2004. Janis requested compensation in the amount of $21,500,000.00. On August 25, 2006, Janis' claim was denied. See Gov. Exh. A, ¶ 12.

10. Tort Claim Ten-TRT-NCR-2006-02352-filed at the North Central Regional Office for the BOP on March 8, 2006, alleging that he has suffered injury to his body and mind including great pain, fatigue, tiredness and otherwise because of the manner in which his medication was administered. Janis claims personal injury commencing on March 1, 2006. Janis requested compensation in the amount of $10,100,000.00. On May 16, 2006, Janis' claim was denied.

11. Tort Claim Eleven-TRT-BOP-2006-0226-filed at the North Central Regional Office for the BOP on October 17, 2005, alleging that BOP staff have been negligent and wrongful in training, supervising, and controlling the BOP Administrative Remedy Coordinator in responding to BP11s. Janis claims personal injury and property loss commencing on September 14, 2004. Janis requested compensation in the amount of $25,000,000.00. On November 14, 2005, Janis' claim was denied.

12. Tort Claim Twelve- TRT-NCR-2006-0207-filed at the North Central Regional Office for the BOP on October 13, 2005, alleging that BOP staff committed "fraud, bad faith, concealment, dishonesty, incompetence, mismanagement, gross mismanagement, misapplication of trusts, misrepresentation and acted in an "unprofessional manner" as related to the operation of the inmate trust fund management." Janis claims property loss commencing on August 1, 1995 and continuing to October 10, 2005. Janis requested compensation in the amount of $200,000,000.00. On April 7, 2006, Janis' claim was denied.

13. Tort Claim Thirteen-TRT-NCR-2006-01437-filed at the North Central Regional Office for the BOP on January 10, 2006, alleging that BOP staff purposefully "mismanaged" the inmate trust fund by changing the amount of telephone minutes available for purchase. Janis claims property loss to the Inmate Trust Fund commencing on November 1, 2005, and continuing to December 31, 2005. Janis requested compensation be paid to the Inmate Trust Fund in the amount of $3,260,077.05. On June 22, 2006, Janis' claim was denied.

14. Tort Claim Fourteen-TRT-NCR-2006-01430-filed at the North Central Regional Office for the BOP on January 9, 2006, alleging that BOP staff purposefully "mismanaged the inmate trust fund by failing to purchase sufficient holiday items to sell in the facility commissary." The property loss commencing on November 1, 2005, and continuing to December 31, 2005. Janis requested compensation be paid to the Inmate Trust Fund in the amount of $62,704.00. On June 22, 2006, Janis' claim was denied.

15. Tort Claim Fifteen-TRT-NCR-2006-0213-filed at the North Central Regional Office for the BOP on October 13, 2005, alleging that BOP staff have failed to provide him with medical treatment, threatened his family, burned his mother's house down, attempted to kill him and destroy his property. Janis claims personal injury and property loss commencing on September 14, 2004. Janis requested compensation in the amount of $70,000,000.00. On April 7, 2006, Janis' claim was denied.

## II. Material Facts

### A. Janis' Medical Care and Medication Distribution

The government's brief in support of its dispositive motion recites approximately 25 pages of material facts related to Janis' medical care. These facts detail the medical treatment Janis received at USP Terre Haute. These facts are summarized as follows:

Janis was transferred from USP Terre Haute, Indiana, on August 15, 2007. While an inmate at USP Terre Haute, Janis received appropriate and timely treatment for his medical complaints. See Gov. Exh. G, ¶ 114. There is no indication, from his medical records, that Janis suffered unnecessarily or that he was denied treatment while housed

at USP Terre Haute. Janis received medical treatment/care consistent with BOP Clinical Practice Guidelines, BOP policy and within recognized community standards. Janis was placed on pill-line at USP Terre Haute on November 19, 2004. See Gov. Exh. F, Declaration of Mark Allanson, Chief Pharmacist, ¶ 5. Janis was allowed to self carry his inhaler and nitroglycerin, but all other routine medications were available for Janis at pill line on a daily basis, three times a day. The purpose of placing Janis, or any other inmate, on pill-line is so that staff may be able to verify compliance with taking the medication as prescribed by the physician. Janis had a long history of non-compliance with taking his medications while he was confined at USP Terre Haute.

**B. Shakedown and Confiscation of Books**

When Janis arrived at USP Terre Haute on September 15, 2004, he had approximately 1,200 pounds of legal material contained in seventeen (17) boxes. On or about October 1, 2005, USP Terre Haute was placed on lockdown status by the Warden. The lockdown was ordered because of security concerns when staff noted inmates gathering in groups on the recreation yard and at the entrances to the housing units. See Gov. Exh. C, ¶ 5. The inmate groupings were by race and faction, and the Warden decided to lock down, gather intelligence, and find out what might be going on. The institution remained on lockdown until October 6, 2005.

During the lockdown, mass shakedowns were conducted of the housing units at the USP, and the Warden directed that staff remove any contraband, including metal binder clips that were utilized by inmates or staff. See Gov. Exh. C, ¶ 6; D, ¶ 4; and E, ¶ 4. When staff are assigned to conduct shakedowns of an inmate's cell or any other area within the institution there are no mandatory rules, regulations, procedures or statutes that staff are required to follow concerning how the shakedown is to be conducted or the manner in which the cell is to be left. When a staff member conducts a shakedown they exercise individual judgment concerning the manner in which the shakedown is completed and the manner the cell is left after the shakedown is completed. Other issues taken into consideration during a mass shakedown are such factors as the number of staff available, the time constraints required for the completion of the shakedown and any financial constraints which may arise because of overtime pay. Additionally, extra staff resources may be necessary to maintain the secure, safe and orderly operation of the rest of the institution. See Gov. Exh. C, ¶ 15; and E, ¶ 4.

There is no specific definition of contraband, and what may or may not be considered or deemed to be contraband is a function left to the sound discretion and judgment of prison administrators. Considerations relevant to what may or may not be contraband include staff and inmate safety, security, and budget considerations. See Gov. Exh. E, ¶ 4. The metal clips which were the subject of the search at issue in this claim were a concern because of an incident which had recently occurred at another institution and in that situation it was revealed that inmates had utilized the same type of metal binder clip to cut through bars in a cell in an effort to escape. The Warden also ordered all metal in the possession of inmates that was not authorized to be confiscated. See Gov. Exh. D, ¶ 4.

On October 5, 2005, Ms. Glass was assigned to shakedown cells. In the process of

those shakedowns Ms. Glass confiscated two books from Cell E2-205 which was assigned to Janis, Register No. 27760-048. The confiscated books had hard covers and metal bars on each side. See Gov. Exh. C, ¶ 7; D, ¶ 6; and E, ¶ 6. The bars from the books could be removed and fashioned into a weapon known as a "shank." The existence of the contraband and the security concern related to use of the metal for weapons were the reasons that Ms. Glass confiscated the books. The types of metal strips present in Janis' books would have been considered contraband in any prison environment, and would be deemed a hazard because the metal could easily be made into weapons that could harm staff or other inmates. The confiscation was appropriate and completed according to BOP policy. See Gov. Exh. C, ¶ 14; and D, ¶ 8. Janis signed each confiscation form on October 5, 2005, and acknowledged that he received a copy of this inventory. See Gov. Exh. D, ¶ 7, Attachments 1 and 2; and Gov. Exh. E, ¶ 5.

Janis was offered the materials which were contained in the binders without the binders, but he refused that offer. After Janis refused to accept the materials without the binder and metal, he was also given the option of mailing the binders and contents, intact, to an address of his choice. Janis refused to provide a mailing address and the two volumes of the Federal Practice Manual were stored in the Lieutenant's Confiscated Property Locker where they have remained up until recently. See Gov. Exh. C, ¶ 11. The October 5, 2005, shakedown was accomplished professionally and without incident according to the duly promulgated BOP regulations and policy. Ms. Glass did not destroy or cause Janis' paperwork to be disorganized or disheveled during the shakedown. See Gov. Exh. D, ¶ 8. Janis still has the opportunity to provide an address to staff where the books can be mailed outside the prison system or he may be allowed to retain the contents of the books without the binders/covers. See Gov. Exh. E, ¶ 8. The confiscated property is currently maintained in the USP Terre Haute Legal Department.

**C. Inmate Telephone System and Commissary Stock**

The BOP's provision of phone service for use of the inmates is a service provided to the inmates by the BOP, and the amount of time allotted for each inmate's use is a discretionary decision of the BOP balancing a number of policy variables, including facilities, budget, staff resources, and alternative methods of communications. Program Statement # 5264.07, Telephone Regulations for Inmates, and Program Statement # 4500.05 Trust Fund/ Deposit Fund Manual, are relevant to the telephone issues. See Gov. Exh. B, ¶ 4. The Program Statements are policies established by the BOP and given to each Warden to guide their implementation of the discretionary programs to inmates. BOP Program Statement 5264.07 Telephone Regulations for Inmates, Page 13, d, (1) provides, in part, that:

> Inmates with ITS-II accounts are limited to 300 minutes per calender month. This applies to all inmates with an ITS-II account in Bureau institutions, and may be used for any combination of collect or direct dial calls at the inmate's discretion. This limitation will help protect the security and good order of Bureau institutions.

See Gov. Exh. B, ¶ 5, Attachment 2, Program Statement 5264.07, Page 13,d, (1).

BOP Program Statement 4500.05, Trust Fund/ Deposit Fund Manual, effective January 22, 2007, Chapter 6, Page 7,(5) states:

> Telephone Call Restrictions. Inmates are restricted to 300 minutes of calling time per calendar month; except that the restriction is set at 400 minutes for the months of November and December. The ITS automatically resets each inmate account monthly regardless of inmate usage. Unused minutes are not carried into the next month.

See Gov. Exh. B, ¶ 6, Attachment 3, Program Statement 4500.05, Page 7 (5).

The minutes of telephone usage allowed to the inmates at USP Terre Haute during the months of November and December 2005 were increased to allow inmates more time to communicate with their families. See Gov. Exh. B, ¶¶ 3 and 7. The amount of time inmates are allowed to use the telephone system is discretionary and not the subject of any mandatory rules, regulations, procedures, or statutes which require the BOP to give an inmate a certain amount of telephone minutes a month. The only guidance on those issues is the discretionary policy guidance provided to all institutions by PS 4500.05.

Prior to the holiday season every year, BOP staff orders a variety of holiday items for purchase in the Commissary by the inmate population. See Gov. Exh. B, ¶ 9. These items purchased for the holidays are in addition to products regularly stocked in the Commissary, and staff are in no way mandated to add or purchase them. Items purchased for sale in the Commissary represent a broad spectrum of products and the quantities of orders are left to the discretion of each institution. Staff at USP Terre Haute order the various holiday items offered for sale, and they decide on the volume of those items, based upon what staff believe will sell within a reasonable amount of time. The decision to buy products is based upon past experience and an educated guess as to demand, cost, and interest of inmates in the proposed product. These buying decisions are also made based upon an evaluation of many factors including the Commissary budget, cost of items, size of items, weight of items, security related issues as to the appropriateness of having those items introduced into a prison setting, etc. Once these decisions to place an order are set based upon staff's judgment and discretionary estimates, if the inmate demand for a particular item is found to have outpaced the stock, the item is often re-ordered if possible. Some of the purchases are seasonal and cannot be re-ordered because the vendor also runs out of the items. There were no mandatory rules, regulations, procedures or statutes violated concerning the amount of holiday items which were stocked to sell in the Commissary during the times relevant to Janis' Complaint. See Gov. Exh. B, ¶ 10.

## D. Interference with Administrative Remedies

On November 10, 2005, the Administrative Remedy Coordinator at USP Terre Haute rejected Administrative Remedy 394641-F1 as being untimely filed. Administrative Remedy 394641-F1 remedy was rejected with the explanation that the remedy must be received within 20 days of the events complained about. The event Janis complained of allegedly occurred in August 2005. See Gov. Exh. A, ¶ 7.

On November 16, 2005, Administrative Remedy 395170-F1 was rejected by the Administrative Remedy Coordinator with the explanation that Janis must provide more specific information about his request/appeal so that it may be considered. These remedies were both rejected by the Administrative Remedy Coordinator in compliance with the BOP's Administrative Remedy Program found at 28 C.F.R. Part 542. Janis did not re-file or appeal the Administrative Remedy 394641-F1, filed November 10, 2005, and abandoned the administrative process. Janis did attempt to administratively appeal the handling of his November 16, 2005, administrative remedy, Administrative Remedy 395170-F1. However, that appeal was rejected on November 30, 2005, and Janis then filed the Notice of Tort Claim thereby abandoning his administrative claim process. See Gov. Exh. A, ¶ 7.

## III. Summary Judgment Standard

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. Rule 56(c). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc*., 325 F.3d 892, 901 (7th Cir. 2003). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FED.R.CIV.P. 56(e)(2). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. See *Harney,* 526 F.3d at 1104 (citing cases). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Id.* at 1104 (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

"In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. The mere existence

of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney,* 526 F.3d at 1104 (internal citations omitted). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

## IV. DISCUSSION

### A. Claims Barred by Statute of Limitations

The United States argues that six of Janis' fifteen separate tort claims are barred by the statute of limitations and are not subject to equitable tolling. Janis asserts that none of his claims should be dismissed because they are subject to equitable tolling.

It is undisputed that Janis seeks relief in this lawsuit for six tort claims which were denied in excess of six months before this suit was filed on November 6, 2006. Title 28 U.S.C. § 2401(b) provides in pertinent part:

> A tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

However, the Entry and Notice of September 10, 2008, explained this court's view that in appropriate circumstances, equitable tolling may apply to a claim pursuant to the Federal Tort Claims Act ("FTCA") and gave Janis additional time to provide evidence justifying the application of equitable tolling to the claims in this case.

The Supreme Court in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), stated that:

> courts have typically extended equitable relief only sparingly, [allowing] equitable tolling in situations where the claimant has actively pursued his judicial remedies . . . or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.

498 U.S. at 96.

Although the statute of limitations is an affirmative defense, Janis, as the plaintiff, has the burden of proving an exception to the statute. *See McCall ex rel. Estate of Bess v. United States*, 310 F.3d 984, 987 (7th Cir. 2002). Janis has not met this burden. Janis

argues that his late filing of some claims should be forgiven by application of the equitable tolling doctrine because: a) he was in the hospital; b) he was in detention; c) the prison at Terre Haute was in a "lock down" situation and he was confined to his cell; d) he was denied access to his materials by not allowing all of them in his cell; and e) the prison officials confiscated his materials that when taken were too vast and disorganized to allow him to meet the 6-month deadline for filing suit. See Janis' Response to Court's Order to Show Cause, Dkt. 61, pp.3-4.

Janis does not claim that he was misled or tricked into believing that his filing deadlines were anything but the date marked by the 6-month date after mailing of the denial of his various tort claims by the BOP. Janis makes no allegation that his access to the Court was obstructed in any way, nor does he claim that the United States prevented him, by deception, fraud, or deceit from filing anything with the court. Janis completely fails to explain throughout his recitation of the circumstances offered how he was prevented from filing a simple complaint with the court alleging that he is owed money due to the negligence of employees of the United States. Rather, Janis offers excuses for why he was not personally prepared to file his lawsuit, none of these circumstances are sufficient.

***Illness.*** Janis claims that between December 3 and December 17, 2005, he was handcuffed to his bed and denied legal materials while he was treated for his various medical conditions. An inmate simply being sick for a short interval during the 6-month time period, and not able to do the legal work on his case, is not sufficient justification for tolling the statute. *See Irwin*, 498 U.S. at 96 (no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants); *Modrowski v. Mote*, 322 F.3d 965 (7th Cir.2003) (holding that attorney incapacity due to illness did not warrant equitable tolling).

***Lockdown.*** Janis also claims that he is entitled to tolling of the statute because USP Terre Haute was in a lockdown status from January 16, 2006, through February 5, 2006, February 27, 2006, through March 10, 2006, and September 22, 2006, through September 30, 2006. Although not material, there is a question of fact regarding whether or not Janis had access to his legal materials during this time.

***Administrative Detention.*** Janis asserts that he was in detention at the Special Housing Unit ("SHU") between April 19, 2006 and April 26, 2006. However, during this time, he had access to an electronic law library and Educational Staff make regular rounds in the SHU and procure legal materials requested by the inmates that could not be retrieved from the electronic system. See Gov. Exh. I, ¶ 10. An inmate temporarily housed in detention, would have had access to the law library, and nothing about the location of his housing arrangement would impair him from diligently pursuing his filing deadline. Moreover, the SHU has had an electronic library available since April 2005, so Janis would have had access to a full law library even while in the SHU and during the times relevant to his filing deadlines.

***Legal Papers Placed in Storage.*** Janis also claims that as of April 19, 2006, his legal materials were taken from him and left in disarray so that he could not timely organize them to respond and file his suit after his tort claims were denied. There is no evidence that

the materials were taken to prevent his use of them or to prevent him from filing his complaint. Rather, the undisputed evidence establishes that the records at issue in this claim were in excess of the volume and amount allowed by BOP policy. Rather than being destroyed or removed from Janis' use, they were taken from his cell to properly enforce a legitimate and necessary safety and sanitation regulation, but the materials were stored in boxes in a separate room, organized by Janis, and available for his use as needed when he asked for access to them to meet his legal deadlines. Although not material, there is a question of fact regarding how much time Janis could spend in the storage room.

In sum, Janis does not make a case for the fact that his short intervals of illness, the institutional lockdowns, or his housing in detention impaired his ability to access necessary legal materials. The Seventh Circuit has rejected arguments of this nature in the habeas corpus context, holding that equitable tolling is not available to prisoners who have limited access to legal materials. *See Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (60-day segregation without access to law library, alleged interference with prisoners' mail, and reliance on a service that falsely promised to prepare and file the petitioner's habeas petition did not justify equitable tolling); *see also Tucker v. Kingston*, 2008 WL 3563835, at *2 (7th Cir. 2008) ("a prisoner's limited access to the prison law library is not grounds for equitable tolling").

Janis has not established that the United States, by misconduct or trickery, prevented him from filing a simple complaint with the court setting forth his claim that he was owed money due to the negligence of employees of the United States nor has he established any extraordinary circumstances, misconduct or "trickery" on the part of the United States that warrants tolling of the statute of limitations. The record establishes that Janis had at least periodic access to his materials and the law library and that, **had he been diligent**, **he could have filed his complaint in a timely manner**. Certainly there is no evidence that the United States prohibited Janis from making such a filing, and in fact he did manage to file a complaint in this matter.

The tort claims barred because the denials were mailed before May 6, 2006 (six months prior to filing suit) include:

1. Tort Claim One-TRT-NCR-2006-00211, denied March 20, 2006, (see Gov. Exh. A, ¶ 4);

2. Tort Claim Two- TRT-NCR-2006-00209, denied April 7, 2006, (see Gov. Exh. A, ¶ 5);

3. Tort Claim Six- TRT-NCR-2006-01599, denied April 6, 2006, (see Gov. Exh. A, ¶ 9);

4. Tort Claim Eleven- TRT-BOP-2006-0226, denied November 14, 2005, (see Gov. Exh. A, ¶ 14);

5. Tort Claim Twelve- TRT-NCR-2006-0207, denied April 7, 2006 (see Gov. Exh. A, ¶ 15); and

6. Tort Claim Fifteen- TRT-NCR-2006-0213, denied April 7, 2006 (see Gov. Exh. A, ¶ 18).

The result is that Tort Claims One, Two, Six, Eleven, Twelve, and Fifteen are barred as a matter of law, and must be **dismissed**.

**B. Claims Dismissed Pursuant to 28 U.S.C. § 2671**

Janis' Tort Claim Four- TRT-NCR-2006-00987, alleges that employees of the BOP negligently interfered with his administrative remedy processes. The United States contends that it is entitled to judgment as a matter of law on this claim, because there is no duty in Indiana law requiring a private citizen to provide, or administer, administrative remedies to inmates. In response, Janis simply repeats his allegations regarding Tort Claim Four, but he does not address the failure to state a claim issue, nor does he provide any admissible evidence to overcome the defense. See Janis' Opposition, p. 14.

The FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq., is a limited waiver of sovereign immunity, making the federal government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. *See United States v. Orleans*, 425 U.S. 807, 813 (1976). FTCA claims are governed by the substantive law of the state in which the alleged tort occurred. See 28 U.S.C. 1346(b), 2674; *see also White v. United States*, 148 F.3d 787, 793 (7th Cir. 1998). Section 1346(b) of Title 28 waives the United States' sovereign immunity for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The Act further provides that the United States shall be liable with respect to tort claims "in the same manner and to the same extent as a private individual under like circumstances." § 2674. Janis complains that the acts of negligence by government employees occurred at USP Terre Haute, Indiana. Therefore, Janis must state a claim that is "actionable under the substantive law of Indiana." See 28 U.S.C. § 1346(b); *White*, 148 F.3d at 793.

Thus, in order to establish a viable tort claim against a defendant, Janis must establish, as required by Indiana law, that the United States: 1) owed Janis a duty; 2) breached that duty; and 3) that the alleged breach of duty caused him injury. *See Bowman ex rel. Bowman v. McNary*, 853 N.E.2d 984, 990 (Ind. Ct. App. 2006) (*citing Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004)).

Janis' Tort Claim Four- TRT-NCR-2006-00987, alleges that employees of the BOP negligently interfered with his administrative remedy processes. Janis complains that Administrative Remedy 394641-F1, filed on November 10, 2005, and Administrative

Remedy 395170-F1, filed November 16, 2005, were not handled properly within the Administrative Remedies procedure provided by the BOP. See Gov. Exh. A, ¶ 7, Attachment 5. The administrative remedies that Janis is referring to in Tort Claim TRT-NCR-2006-00987 are those provided to inmates by federal regulations, see 28 C.F.R. § 542.10 (2007), and incorporated at USP Terre Haute as set forth in Program Statement 1330.13.

It is well established federal law that the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA. *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985) (citing cases). Claims can be based upon negligent performance of duties under federal statutes and regulations, but only if there are analogous duties under state tort law. *Id.* The administrative remedies procedure provided by the BOP is a federal regulation intended to assist federal inmates to "seek formal review of an issue related to any aspect of his/her confinement." See 28 C.F.R. § 542.10 (2006). There is no duty in Indiana law that requires a private citizen to provide, or administer, administrative remedies to inmates. Nor are there any "'like' circumstances that lead to private liability." *Carter v. U.S.,* 982 F.2d 1141, 1144 (7th Cir. 1992) (citing *Indian Towing Co. v. United States*, 350 U.S. 61 (1955) (operation of a lighthouse)). Therefore, as to the claims stated in Tort Claim Four- TRT-NCR-2006-00987, Janis fails to state a claim upon which relief can be granted, and the United States is entitled to judgment as a matter of law.

**C. Claims Barred by 28 U.S.C. § 2680(a)**

The United States contends that certain of Janis' claims relate to activity which involves the discretionary functions of BOP employees, and claims based upon such discretionary actions are barred. 28 U.S.C. § 2680(a). Janis' Opposition is silent as to the application of the discretionary function exemption to any of his claims. These claims include:

(1) A cell search and the confiscation of his property. See Tort Claim Three- TRT-NCR-2006-00326, and Tort Claim Eight- TRT-NCR-2006-02081;

(2) The designation of USP Terre Haute as a class III medical care facility. See Tort Claim Seven- TRT-NCR-2006-01600

(3) The administration of the inmate telephone program. See Tort Claim Thirteen- TRT-NCR-2006-01437;

(4) The administration of the inmate Commissary program. See Tort Claim Fourteen- TRT-NCR-2006-01430.

The FTCA did not waive the sovereign immunity of the United States in all respects, Congress was careful to except from the FTCA's broad waiver of immunity several important classes of tort claims. Of particular relevance here, is the "discretionary function"

exception, 28 U.S.C. § 2680(a), which provides that the Government is not liable for

> [a]ny claim based upon an act or omission of an employee of the Government exercising due care, in the execution of a statute or regulation . . . or based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "The discretionary function exception . . . marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

The purpose of the discretionary function was Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions ground in social, economic, and political policy through the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814. If the discretionary function bar is to apply to a particular claim the act involved must involve "an element of judgment or choice." *See United States v. Gaubert*, 499 U.S. 315, 322 (1991); *see also Rothrock v. United States*, 62 F.3d 196, 198 (7th Cir. 1995). Thus, if the course of conduct at issue is prescribed by a federal statute, regulation, or policy the discretionary function exception does not apply. *Gaubert*, 499 U.S. at 322. Janis offers no admissible evidence of any breach of mandatory rules, regulations or statutes that required the United States employees to act in a manner other then how they performed their discretionary actions.

If the court finds the acts at issue involve discretion and judgment, it must then inquire as to whether those acts are "based on considerations of public policy." *Gaubert*, 499 U.S. at 323. Where such is the case, "actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations are protected." *Id.* The issue is whether the nature of the challenged conduct is susceptible to policy analysis – not the subjective intent of the actor exercising discretion. *Gaubert*, 499 U.S. at 325; *Rothrock v. United States*, 62 F.3d 196, 199-200 (7th Cir. 1995).

"Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977). The courts have recognized that matters related to a prison's internal security are discretionary judgments best left to prison administrators. *See Rhodes v. Chapman,* 452 U.S. 337, 349, n.14 (1981); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." ).

In the present case, Janis' claims related to Tort Claim Three-TRT-NCR-2006-00326, Tort Claim Seven-TRT-NCR-2006-01600, Tort Claim Eight-TRT-NCR-2006-02081, Tort Claim Thirteen-TRT-NCR-2006-01437, and Tort Claim Fourteen- TRT-NCR-2006-01430 are barred by the discretionary function bar because the acts complained of involve discretionary judgment that Congress intended to be shielded from liability.

### *1. Cell Search and Confiscation of Books*

First, as to his claim regarding the cell search and confiscation of his books, Tort Claim Three and Eight[1], it should be noted that the cell search and the confiscated materials that Janis complains about were the by product of a mass lockdown of the entire prison related to security concerns. See Gov. Exh. C, ¶¶ 5, 6, 9, and 10; Gov. Exh. E, ¶ 4. There is no specific definition of contraband, and no rules or regulations that define it as anything except as objects not authorized. What objects are considered to be contraband is left to the sound discretion and judgment of the prison administrators and their staff. What objects might be considered contraband are the subject of a number of policy considerations, including inmate and staff safety, security, and budget considerations (storage and space requirements, etc.). Morever, decisions and allocation of resources related to the training and supervision of the employees performing these discretionary prison security duties are equally intertwined with policy considerations that make Janis' claims related to negligent training and supervision subject to the same discretionary function bar. Thus, Janis' claims related to the search of his cell and the confiscation of his books are barred as a matter of law. See 28 U.S.C. § 2680(a); *Gaubert*, 499 U.S. 315.

Additionally, the search and confiscation were handled according to policy, the cell search was professionally completed not leaving the cell in disarray, the proper confiscation forms were completed by staff, and Janis refused to accept his property back without the offending contraband. See Gov. Exh. C, ¶¶ 5-11, 14; Gov. Exh. D, ¶¶ 3-8; and Gov. Exh. E, ¶¶ 5-7. Notwithstanding these facts, Janis claims that his property was taken or damaged because of the staff's negligence. Since the cell search and confiscation of contraband are discretionary acts, any allegations that the BOP staff did not follow policy or was negligent in its conduct are irrelevant to the analysis. *See Hylin v. United States*, 755 F.2d 551, 553 (7th Cir. 1985) (if actions of the government employees involved discretion, the discretionary function exception will serve to protect the government from suit, even if the employees abused its discretion or was negligent in the performance of its discretionary duties).

### *2. Class III Medical Facility*

Janis' claim that the designation of USP Terre Haute as a Class III medical facility

[1] Tort Claim Three- TRT-NCR-2006-00326, and Tort Claim Eight- TRT-NCR-2006-02081.

was improper (Tort Claim Seven-TRT-NCR-200601600) is barred by the discretionary function exemption. A prison's medical designation is a discretionary decision based on social policy and budgetary considerations related to the discretionary decision of where to house and designate inmates within the federal prison system.

### *3. Telephone Usage*

Janis' claim related to an alleged cutback in the minutes of telephone usage (Tort Claim Thirteen-TRT-NCR-2006-01437) is also barred by the discretionary function exemption. The provision of telephone service to inmates is the subject of several guidance program statements issued by the BOP for all institutions to consult. See Gov. Exh. B, ¶¶ 3-7. Decisions related to the appropriate amount of inmate telephone usage are left to the discretion of the local staff at the various institutions. Those decisions are made by local prison administrators after considering a number of policy related issues, including facilities, budget, staff resources, and alternative methods of communications. There are no mandatory rules, regulations, or statutes which mandate the minutes of phone usage that inmates are allowed at BOP facilities. Since the telephone usage policy is discretionary with the authority of prison administrators, and the exercise of that discretion requires the balancing of policy considerations such as budget, facilities, staff resources, etc., Janis' claim related to the negligent administration of the inmate telephone system is barred as a matter of law. See 28 U.S.C. § 2680(a); *Gaubert*, 499 U.S. 315.

### *4. Inmate Commissary*

Janis' claims related to an alleged negligent stocking of the inmate Commissary (Tort Claim Fourteen- TRT-NCR-2006-01430) causing him to not be able to purchase holiday gift items is likewise barred by the discretionary function exemption. The administration of the Commissary for inmates' use consists of procuring a broad range of items for purchase. See Gov. Exh. B, ¶ 9. The quantities of stock, and which items to stock, is left to the discretion of prison administrators at the various institutions. Decisions to buy product are based upon past experience and an educated guess as to demand, cost, and interest of inmates in the proposed product. Those buying decisions are based upon an evaluation of many factors including the budget, cost of items, size of items, weight of items, security related issues as to the appropriateness of having those items introduced into a prison setting, etc. During the holiday season various holiday items are stocked for the inmates to purchase. The decisions related to which holiday items to purchase and in what volume is based upon what prison administrators believe will sell within a reasonable amount of time based upon past experience, and an educated guess as to demand, cost, and interest of inmates in the proposed product. There are no mandatory rules, regulations, or statutes which mandate the type or amount of stock to be purchased for sale at the Commissary. See Gov. Exh. B, ¶ 10.

Since the type and amount of stock available at the Commissary are decisions made utilizing the experience and judgment of the local staff exercising their discretion and balancing multiple policy considerations. Janis' claim related to the negligent administration of the Commissary is barred as a matter of law. See 28 U.S.C. § 2680(a); *Gaubert*, 499 U.S. 315.

### D. Medical Care Claims

The United States asserts that it is entitled to judgment as a matter of law as to Janis' claims of inadequate medical care. (Tort Claim Five-TRT-NCR-2006-00986, Tort Claim Seven-TRT-NCR-2006-01600, Tort Claim Nine-TRT-NCR-2006-02994, Tort Claim Ten-TRT-NCR-2006-02352, and Tort Claim Fifteen- TNT-NCR-2006–213). Several of these claims include negligent supervision and training claims which are just another way of saying that the United States was negligent in providing Janis his medical care and are reliant upon the same facts for their proof as are the underlying allegations of the medical care at issue.

In Janis' Opposition, he argues that Dr. Doris Williams' declaration is not based on personal knowledge. Janis states that contrary to the United States' evidence he was never counseled or treated for his chest pain, heartburn and gall bladder issues, that his prescriptions went unfilled, that he was required to receive his medications at the pill line, he was denied the use of a cane, and was required to work. However, Janis admits that he refused to take the medications available to him.

Indiana law applies to Janis' claim that employees of the United States committed malpractice in the provision of health care at USP Terre Haute, Indiana. See 28 U.S.C. 1346(b), 2674; *see also White v. U.S.*, 148 F.3d 787, 793 (7th Cir. 1998). The plaintiff, in this case Janis, has the burden of proving each element comprising physician negligence if he is to prevail on his claim.[2] *See Long v. Johnson*, 381 N.E.2d 93, 98 (Ind. Ct. App. 1978). The elements of a medical malpractice case in Indiana are: "(1) that the physician owed a duty to Janis; (2) that the physician breached that duty; and (3) that the breach proximately caused Janis' injuries." *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind. 1995).

"A plaintiff must present expert testimony to establish the applicable standard of care and to show whether the defendant's conduct falls below the standard of care." *Musser v. Gentiva Health Sev.*, 356 F.3d 751, 760 (7th Cir. 2004) (citing *Whyde v. Czarkowski*, 659 N.E.2d 625, 627 (Ind. Ct. App. 1995) and *Narducci v. Tedrow*, 736 N.E.2d 1288, 1292 (Ind. Ct. App. 2000)). In Indiana, "except in those cases where deviation from the standard of care is a matter commonly known by lay persons, expert medical testimony is necessary to establish whether a physician has or has not complied with the standard of a reasonably prudent physician." *Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind. 1992). "Cases which do not require expert testimony generally involve the physician's failure to remove surgical implements or foreign objects from the patient's body." *Simms v. Schweikher*, 651 N.E.2d 348, 350 (Ind. Ct. App. 1995).

Janis states that although he could have a medical doctor testify at trial, such testimony is unnecessary because most of his allegations relate to Doctor Webster falsifying Janis' medical file. For example, Janis claims that he never stated that he would

---

[2] Janis, however, mistakenly assumes that it is the United States' obligation to prove that there was no medical negligence as he was provided medical care by employees of the United States.

not comply with medical care instructions because he wanted his family to sue the BOP. Even if medical testimony was not necessary to prove that Dr. Webster owed a duty to Janis and that he breached that duty by falsifying his medical record, there is no admissible evidence that this alleged inaccurate report caused Janis' injuries. The question of causation in medical malpractice cases is generally one that requires proof by a medical doctor. *Kranda v. Houser- Norborg Med. Corp*, 419 N.E.2d. 1024, 1038 (Ind. Ct. App. 1981) (judgment was proper where there was no evidence to support the element of proximate cause).

Contrary to Janis' claims,[3] the United States has established, by admissible evidence, that Janis received extensive medical care while housed at the USP Terre Haute. Dr. Williams, both the treating doctor for a period of Janis' treatment, and as a custodian of the official business records of the USP Terre, reviewed and chronicled Janis' course of medical treatment. The basis for Dr. Williams' declaration was a complete review of the official medical records maintained in the ordinary course of business by the BOP, her experience as the treating doctor for Janis (admissible pursuant to Fed. R. Evidence 701), and her education and training as a licensed physician (admissible pursuant to Fed. R. Evidence 702). In the present case the evidence of record establishes that Janis received timely medical care that was responsive to his needs and compliant with the care required according to the BOP policy and community standard of care. *See* Gov. Exh. G, ¶ 114. Janis received care necessary to evaluate and respond to his medical complaints. *See* Gov. Exh. G. The record evidence establishes that Janis received timely and necessary medical treatment consistent with BOP policies and standards and the community standards as required by Janis' medical circumstances and conditions. The evidence shows no breach of duty and the United States is entitled to judgment as a matter of law.

Janis' Opposition does contest some specific facts related to the provision of his medical care, and, since he is not the moving party in this motion, those facts must be construed as true and in a light most favorable to Janis. However, the facts related to medical care and disputed by Janis are not material to the ultimate issue of whether the United States breached the requisite medical standard of care, and, they are not, therefore, outcome determinative and do not prohibit summary judgment on that issue. *See Contreras v. City of Chicago*, 119 F.3d 1286, 1292 (7th Cir. 1997) (*citing Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986) ("[F]acts not outcome-determinative under the applicable law, though in dispute, may still permit the entry of summary judgment."). As set out above, Indiana law requires that Janis provide expert testimony to establish the proper standard of care in Indiana, and that the care administered breached that standard. Janis' arguments fall considerably short of that requirement.

Janis simply responds to the United States' Motion with continued legal argument, bald reassertions and restated opinions or contentions that the allegations contained in his

---

[3] Janis asserts that the United States' dispositive motion is not the appropriate time for expert testimony. See Janis' Opposition, p. 17. Janis' assertion is not supported by the law. *See Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) ("The primary purpose of summary judgment is to isolate and dispose of factually unsupported claims.").

Complaint are true and the evidence presented by the United States is false. None of Janis' arguments, however, are supported by admissible evidence or by any quantum of proof that would be sufficient to create a genuine issue of material fact. As directed in the Notice, Janis should have known that Fed. R. Civ. P. 56(e) requires more than simple re-assertion of the same allegations made in his Complaint. "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *See Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983). The admissible evidence of record establishes that there was no breach of the standard of care related to the delivery of medical services to Janis. Accordingly, the United States is entitled to summary judgment on those claims of medical negligence.

### E. Death Threat Claim

Claims contained in Tort Claim Five-TRT-NCR-2006-00986, allege that certain staff from USP Terre Haute mailed holiday cards that include a death threat to his mother, Betty Janis, and his sister, Carras Janis, and brothers George and Jason. Janis states in his Opposition that Unit Officer Jeffery Ramer, is the BOP employee who sent the threatening greeting cards.

Janis fails to state a claim upon which relief can be granted as to the death threat claim. By Janis' own admission, the threats alleged were made to persons other than Gust Janis. They were made, according to the complaint, to Janis' mother, brothers, and his sister. Janis cannot bring a tort action on behalf of his mother, brothers, and sister. In addition, Janis does not provide any evidence of how he personally was harmed by the alleged death threats.

Janis' Opposition also states that he is not bringing this tort claim on behalf of others, but on his own behalf, because his property was destroyed when his mother's home was burned down. There is no evidence that any BOP employee was responsible for the destruction of Janis' mother's home. Even if such evidence could be provided, Janis has not provided any indiction of what property he owned was destroyed. Accordingly, the claims related to death threats must be dismissed.

## V. Conclusion

The United States' Motion to Dismiss, or in the alternative, Motion for Summary Judgment (dkt 53) is granted on each of Janis' fifteen tort claims.

The following six claims are barred as a matter of law, and must be **dismissed**: Tort Claim One-TRT-NCR-2006-00211, Tort Claim Two- TRT-NCR-2006-00209, Tort Claim Six-TRT-NCR-2006-01599, Tort Claim Eleven- TRT-BOP-2006-0226, Tort Claim Twelve-TRT-NCR-2006-0207, and Tort Claim Fifteen- TRT-NCR-2006-0213.

Tort Claim Four-TRT-NCR-2006-00987, is **dismissed** for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 2671.

Tort Claim Three-TRT-NCR-2006-00326, Tort Claim Eight- TRT-NCR-2006-02081, Tort Claim Seven-TRT-NCR-2006-01600, Tort Claim Thirteen-TRT-NCR-2006-01437, and Tort Claim Fourteen-TRT-NCR-2006-01430 are all barred as a matter of law and must be dismissed because they are based on activities which involve the discretionary functions of BOP employees, 28 U.S.C. § 2680(a).

The United States is entitled to summary judgment on the following claims of medical negligence: Indiana Tort Claim Five-TRT-NCR-2006-00986, Tort Claim Seven -TRT-NCR-2006-01600, Tort Claim Nine-TRT-NCR-2006-02994, Tort Claim Ten-TRT-NCR -2006-02352, and Tort Claim Fifteen- TNT-NCR-2006–213. Janis has failed to establish all the elements of his malpractice claim and has failed to provide the expert testimony necessary to establish the proper standard of care in Indiana, and that the care administered breached that standard.

The claims contained in Tort Claim Five-TRT-NCR-2006-00986 related to death threats must be dismissed because Janis has not provided any evidence that he was harmed by the threats.

Final judgment consistent with this Entry shall now be entered.

**IT IS SO ORDERED.**

Date: 03/04/2009

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana